896 F.2d 1383
 283 U.S.App.D.C. 85
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Tyrone G. BAXTER, Appellant.
 No. 89-3065.
 United States Court of Appeals, District of Columbia Circuit.
 March 8, 1990.
 
 Before WALD, Chief Judge, and MIKVA and HARRY T. EDWARDS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the appeal of the defendant from the judgment of the District Court, and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that in No. 89-3065 the judgment is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Appellant, Tyrone G. Baxter, appeals from his conviction on one count of possession with intent to distribute more than 50 grams of a mixture containing cocaine base, in violation of 21 U.S.C. Secs. 841(a) and (b)(1)(A)(iii). Baxter claims that his conviction was based on an unlawful search and seizure, and on the improper testimony of an expert witness. Because we find that no unlawful seizure occurred, and that the expert witness testimony fell within the scope of his stipulated expertise, we uphold the district court's decision.
 
 I. FACTS
 
 5
 Two plainclothes detectives from the Metropolitan Police Department's ("MPD") Drug Interdiction Unit stationed at the Greyhound Bus Station in Washington, D.C., observed the defendant Baxter descend from a bus that had just arrived from New York City, a source city of narcotics. According to the testimony of the officers taken at the suppression hearing and at trial, the defendant was one of the first people to get off the bus. He carried a brown tote bag, appeared nervous, and avoided eye contact with one detective.
 
 
 6
 One of the detectives approached Baxter and asked if he could speak with him. Baxter responded affirmatively, and answered several questions about his bus trip. When asked if he was carrying drugs, Baxter said he was not. The detective then asked whether Baxter would mind if he searched his bag, and Baxter said, "No." The detective placed the bag on the ground and unzipped it. According to both detectives at the scene, Baxter then stated, "You've got me, there's something in the bag." The detective found a white plastic bag, which contained a substance that subsequently tested positive for cocaine, and an airline ticket in the tote bag. The detectives then arrested Baxter. The trial court found that during this brief encounter, the lead detective used a polite and mild conversational tone, and neither detective displayed a weapon.
 
 
 7
 The district court denied Baxter's motions to suppress the evidence and statements. The district court credited the detectives' testimony that the encounter between the officers and Baxter was not coercive, it was not made for any racially-motivated reason, and the defendant's consent to search the bag was voluntary.
 
 
 8
 At trial, the government offered the testimony of a detective as an expert on narcotics, particularly cocaine base and the way it is distributed and packaged in Washington, D.C. Baxter stipulated to the expert on that basis. The expert testified that the quality and quantity of the drugs recovered were not consistent with personal use, and that an individual arrested in the bus station with that quantity of crack, who is also found in possession of an airplane ticket from Washington to New York was likely to be transporting drugs from one jurisdiction to another. Baxter presented no counter-evidence.
 
 II. THE DECISION NOT TO SUPPRESS
 
 9
 Baxter claims that he was improperly seized during the encounter with the detectives, and that, as a result, his consent to the search of his bag was tainted. Controlling precedent compels us to conclude that appellant was not seized within the meaning of the fourth amendment, and that his motion to suppress was properly denied.
 
 
 10
 The rule in this court is that a seizure takes place when "a reasonable person would conclude from the circumstances, and the show of authority, that he was not free to leave the officer's presence." United States v. Brady, 842 F.2d 1313, 1314 (D.C.Cir.1988); see also Gomez v. Turner, 672 F.2d 134, 141 (D.C.Cir.1982). We recently reversed a district court's order suppressing evidence based on a challenge similar to the one now pressed by Baxter. See United States v. Winston, 892 F.2d 112 (D.C.Cir.1989). In Winston, we ruled that no seizure occurred where the encounter took place in the bus station, only two plainclothes officers were involved, their weapons were concealed, their demeanor polite, and they did not restrain Winston's movement during the encounter.
 
 
 11
 Nothing distinguishes the circumstances of Baxter's encounter with the police from those in Winston's case. Additionally, we find no evidence in the record to support Baxter's claim that the police encounter was in any way racially motivated.[1] Therefore, we conclude that no unlawful seizure of Baxter occurred. Moreover, we uphold the district court's finding that Baxter's consent to the search of his bag during the encounter was voluntarily given. Accordingly, we uphold the district court's denial of his motion to suppress.
 
 III. EXPERT TESTIMONY ON MODUS OPERANDI
 
 12
 The government submitted an MPD expert in the distribution and packaging of narcotics, particularly crack or cocaine base, in Washington, D.C. Baxter stipulated to the witness's expertise on these matters.
 
 
 13
 Baxter now objects to two elements of the expert's testimony. First, he contends the expert used examples of distribution patterns from a section of D.C. in which the bus station is not located. Second, he objects to the expert's opinion that a person arrested possessing cocaine base and a return airline ticket was a "mule," i.e., one who transports drugs from one jurisdiction to another.
 
 
 14
 Trial courts have broad discretion to determine whether expert testimony will assist the trier of fact in understanding the evidence under Federal Rule of Evidence 702, and whether that testimony would be relevant and not overly prejudicial under Federal Rule of Evidence 403. See United States v. Dunn, 846 F.2d 761, 763 (D.C.Cir.1988). Testimony about modus operandi in narcotics operations is common, and useful to jurors unfamiliar with the methods which drug dealers use. See United States v. Baskin, 886 F.2d 383, 387-88 (D.C.Cir.1989).
 
 
 15
 The expert's testimony in this case about the likely function of a person found in possession of a substantial amount of cocaine and an airline ticket was consistent with the scope of his expertise in the distribution and packaging of cocaine in D.C. as stipulated to by Baxter. Moreover, the district court properly found that such testimony was relevant and proper in assisting the jury in understanding the significance of the quantity and quality of narcotics seized. Accordingly, we find no error in the expert's testimony in this case.
 
 
 
 [1]
 Baxter argued that race and sex are improperly included as factors in the profile that determines whether an officer in plain clothes approaches an individual. He claimed that one officer's equivocal answer at the hearing to a question on use of race supported this contention. The district court found that the detectives had not relied on any racially-motivated reason for approaching Baxter, crediting the officer's testimony that he approached Baxter because he was getting off of a bus from a source city, he was one of the first people off, he was carrying only a tote bag, and he looked nervously around. The record supports the district court's finding